UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROSS LAMAR WILLIAMS,
    Plaintiff,

vs.                                      Case No.: 3:20cv5782/MCR/ZCB

B. SOWELL,
    Defendant.
_____/

# REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. Plaintiff Ross Lamar Williams is an inmate of the Florida Department of Corrections (FDOC). His Fifth Amended Complaint names Nurse B. Sowell as the sole Defendant. (Doc. 19). Plaintiff claims Defendant acted with deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments, by poisoning him. (*Id.* at 3, 5-9).[1] Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.* at 9). Defendant has moved for summary judgment. (Doc. 43). Plaintiff has responded in opposition. (Docs. 40, 47). For the reasons below, Defendant's motion for summary judgment should be granted.

---

[1] The Court refers to the document numbers and page numbers assigned by the Court's electronic filing system.

1

I.   Factual Background[2]

To understand the facts of this case, the reader must be familiar with the medical tests routinely used to determine if a person is infected with tuberculosis (TB).[3] According to the Centers for Disease Control, one of those tests is a tuberculin skin test (TST). *See Tuberculin Skin Testing Fact Sheet*, Centers for Disease Control and Prevention (Nov. 2, 2020), https://www.cdc.gov/tb/publications/factsheets/testing/skintesting.htm. The skin test is performed by injecting 0.1 ml of tuberculin purified protein derivative (PPD) into the patient's arm. *Id.* The skin test should be read between 48 and 72 hours

---

[2] The facts discussed are drawn from Plaintiff's pleadings and the evidence in the summary judgment record. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986). Where the parties offer conflicting accounts, the Court has "set forth the facts, drawn from the evidence presented, in the light most favorable" to the nonmoving party. *Snow ex rel. v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for summary judgment purposes may, therefore, not ultimately be the true facts. *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

[3] Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). If either party disputes the accuracy of the facts taken from the CDC's fact sheet, or if the party otherwise wishes to be heard on the propriety of the Court's taking judicial notice of those facts, the party must do so in an objection to this Report and Recommendation. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–53 (11th Cir. 2020) (holding that an opportunity to object to a report and recommendation provided the parties a sufficient opportunity to be heard on the issue of the propriety of taking judicial notice).

after administration by a health care worker trained to read skin test results. *Id*. The reader should measure any firm swelling. *Id*. Firm swelling of 10 or more millimeters is considered positive in people who live in high-risk congregate settings such as correctional facilities. *Id.*

The events giving rise to this lawsuit occurred when Plaintiff was an inmate of Walton Correctional Institution (WCI). (Doc. 19 at 4). On June 19, 2019, Defendant Sowell—a nurse at WCI—came to Plaintiff's cell to administer a "TB shot." (*Id.* at 5, 9). Defendant Sowell did not have any paperwork with him. (*Id.* at 5). Plaintiff offered up his left arm and watched as Sowell injected a "half-filled needle" of clear liquid into his arm. (*Id.*). Inmate Corinthian Williams heard Defendant Sowell say that he was administering a "TB shot," and Williams saw Sowell administer the injection. (*Id.* at 17).

Hours after the injection, Plaintiff experienced shortness of breath, profuse sweating, accelerated heart rate, dizziness, reduced mobility in his left/injection arm, vomiting, and diarrhea. (*Id.* at 5). Plaintiff laid down, was unable to move or call for help, and passed out. (*Id.*). The next morning, Plaintiff was still dizzy and unable to think clearly. (*Id.*). His left/injection arm and chest area were painful and "tight." (*Id.*). There is no indication in the record, however, that Plaintiff submitted a sick call in the days following the injection because of these symptoms.

On June 23rd, Defendant Sowell came to Plaintiff's cell to deliver evening medication. (*Id.* at 6). Plaintiff asked Defendant Sowell why a nurse had not checked his arm after the TB test, and Defendant Sowell responded, "If you give someone poison, you do not come back and check them." (*Id.*). Inmate Corinthian Williams and Inmate Andre Dacres heard Defendant Sowell say this. (*Id.* at 17, 18).

Over one month later, on July 31, 2019, Plaintiff submitted a grievance to the medical department requesting information about the injection. (Doc. 1 at 57). Plaintiff asked whether Defendant Sowell had recorded the injection on June 19-21, and he asked the date, time, and name of the nurse who checked the injection site. (*Id.*). A medical staff member notified Plaintiff that the grievance system should not be used to ask questions or seek assistance. (*Id.*).

Plaintiff submitted another grievance on August 12, 2019, requesting documentation concerning the injection he received on June 19, 20, or 21. (Doc. 1 at 60). A medical staff member responded that there was no record of Plaintiff receiving a PPD/TB test on June 19, 20, or 21. (*Id.*). On August 26, Plaintiff submitted yet another grievance requesting the same documentation. (*Id.* at 58-59). The Health Services Administrator, Nurse Rice, responded that there was no record of Plaintiff's receiving a PPD injection on June 19-21, but medical records showed that he had received a PPD injection on June 9, 2019. (*Id.* at 58).

4

Plaintiff obtained a copy of a medical record documenting the PPD injection, and he has submitted a copy of it. (Doc. 40 at 15). It is a form titled "FDOC Tuberculosis Symptoms Questionnaire For Inmates." (*Id*.). The form is to be completed by the medical staff and then signed and dated by the inmate. (*Id.*). Defendant Sowell completed the form, indicating that he administered a PPD injection to Plaintiff on June 9, 2019. (*Id.*). The bottom of the form includes an acknowledgment to be signed by the inmate, which acknowledges the inmate's understanding that he must follow-up with medical staff if he experiences or develops any of the listed symptoms. (*Id.*). The acknowledgement is signed and dated June 9, 2019. (*Id*.). Plaintiff claims, however, that Defendant Sowell forged his signature and the date. (Doc. 19 at 6-7). Plaintiff points out that the handwritten date appearing in the inmate acknowledgement is virtually identical to Defendant Sowell's handwritten date at the top of the form. (Doc. 40 at 5).

On or about September 5, 2019, the WCI warden and Nurse Rice interviewed Plaintiff regarding his complaint that Defendant Sowell injected him with poison. (Doc. 19 at 12, 27-28; *see also* Doc. 1 at 62-67, 69). Plaintiff alleges the warden told him that Defendant Sowell admitted he made the statement to Plaintiff. (Doc. 19 at 12, 28). Two weeks later, the warden notified Plaintiff that he would be transferred to another institution. (Doc. 1 at 73). About that time, Plaintiff was also

5

prescribed Zyprexa—a medicine used to treat "disorders of thoughts, perceptions, behavior and/or affect." (*Id.* at 80).

Plaintiff was transferred to Hamilton Correctional Institution in October 2019. He was seen by a doctor and received a blood test. (Doc. 1 at 76). There is no evidence in the record showing that the blood test revealed the presence of any poison, or that the doctor concluded Plaintiff had been poisoned. At various times, Plaintiff submitted grievances to the medical department complaining of numerous ailments, including shortness of breath and pain in his left/injection arm, chest, neck, lower back, and legs. (*Id.* at 76-79). Medical staff instructed Plaintiff to submit a sick-call request and to declare a medical emergency if he required medical attention prior to the sick-call appointment. (*Id.* at 76-77).

On November 20, 2019, Plaintiff submitted a sick-call request complaining of pain and tightness in his left arm and the left side of his chest, weakness throughout his body, and erectile dysfunction. (Doc. 1 at 74). Plaintiff stated that his symptoms started in June 2019. (*Id.*). Plaintiff was seen by medical staff the next day. (*Id.* at 39). He received muscle cream and Ibuprofen. (*Id.*). There is no indication in the record that the medical staff member determined Plaintiff had been poisoned or that his symptoms were in any way related to being poisoned.

Plaintiff alleges he continues to suffer the following physical injuries as a result of being poisoned by Defendant Sowell: pain and tightness in his left arm and chest, a bleeding hemorrhoid, and erectile dysfunction. (Doc. 19 at 9). Plaintiff alleges he also suffers from depression, paranoia, and loss of sleep. (*Id.*).

Plaintiff seeks compensatory damages for the "life time injuries" he is suffering because of Defendant Sowell's actions. (*Id.*). Plaintiff also seeks punitive damages, as well as nominal damages. (*Id.*).

## II. Applicable Legal Standards

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. When answering that question, courts view the evidence in the light most favorable to the nonmoving

7

party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Likewise, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

**B.     Eighth Amendment deliberate indifference standard**

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477 U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment deliberate indifference claims. The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). The deliberate indifference standard is much higher than simple negligence or medical malpractice. *Id*. at 1505. The Eighth Amendment does not require a

prisoner's medical care to be "perfect, the best obtainable, or even very good." *Id*. at 1510 (cleaned up). Indeed, the deliberate indifference standard is only met if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505 (cleaned up). After all, it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious" medical or mental health need. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id*. (cleaned up). To satisfy the subjective prong, a plaintiff must prove that prison officials (1) had "subjective knowledge of a risk of serious harm", (2) "they disregarded that risk", and (3) did so in a manner that "was more than mere

9

negligence." *Id*. (cleaned up). The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id*.

### III.   Discussion

**A.   Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim.**

Plaintiff claims that Defendant Sowell was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because he injected him with poison. (Doc. 19 at 3). Defendant Sowell argues he is entitled to summary judgment because Plaintiff has failed to come forward with any evidence (aside from his self-serving statements) to support his claim that Defendant Sowell injected him with poison instead of the tuberculin PPD (i.e., the TB skin test). (Doc. 43 at 7-8). Defendant Sowell also argues that he is entitled to summary judgment because the evidence in the record does not show that the ailments Plaintiff complains of were caused by the challenged injection. (*Id.* at 8-9).

There is no dispute that Defendant administered one, and only one, injection to Plaintiff in June of 2019. Although there is a dispute as to when the injection was administered (the medical record says June 9, but Plaintiff and his witnesses say June 19, 20, or 21), the date of the injection is immaterial. Plaintiff's deliberate indifference claim is based upon *what* Defendant Sowell injected, not *when* he injected it. The medical record (i.e., the FDOC Tuberculosis Symptoms

10

Questionnaire) establishes that the substance injected into Plaintiff's arm was the tuberculin PPD used to test for TB. (Doc. 19 at 19). The record shows that this was Defendant's annual administration of tuberculin PPD. (*Id.*).

There is nothing in the medical record to show that any other substances were injected into Plaintiff's arm by Defendant Sowell. And the evidence in the record shows that when he administered the shot, Defendant Sowell stated that it was a TB shot. (*See* Doc. 19 at 5, 17). Although Plaintiff made visits to sick call complaining of various symptoms, there is nothing in the record showing that any of those sick calls led to a diagnosis of poisoning. Indeed, there is nothing in the record to show that any medical professional has ever diagnosed Plaintiff with poisoning or treated him for symptoms of poisoning. The record does reflect that Plaintiff had bloodwork ordered by a physician at one point (Doc. 1 at 76), but Plaintiff has neither alleged nor provided any evidence that the bloodwork showed the presence of poison. The only evidence Plaintiff has that he has been poisoned is that when Plaintiff asked why nobody had come back to check the results of his TB test, Defendant Sowell stated: "If you give someone poison you do not come back and check them." (Doc. 19 at 6). That stray comment, standing alone, is insufficient to establish that Defendant Sowell actually injected Plaintiff with poison under the guise of giving him a TB shot. *See generally Combs v. Plantation Patterns*, 106 F.3d 1519, 1526

(11th Cir. 1997) (explaining that the "nonmoving party must provide more than a mere scintilla of evidence to survive a motion for summary judgment…there must be a substantial conflict in evidence to support a jury question").

Furthermore, to prevail on his Eighth Amendment claim Plaintiff must show that Defendant Sowell's conduct caused the injuries Plaintiff alleges. *See Mann v. Taser Intern., Inc,* 588 F.3d 1291, 1306 (11th Cir. 2009) (stating that a deliberate indifference claim requires a plaintiff to prove "causation" between the "indifference and the plaintiff's injury"); *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (explaining that for deliberate indifference "as with any tort claim, [the plaintiff] must show that the injury was caused by the defendant's wrongful conduct"). Plaintiff alleges that Defendant Sowell's conduct caused him to suffer from erectile dysfunction, "damage to [his] anus by large hemorrhoid," and tightening pain in his heart, left lung, left arm, as well as depression, paranoia, and sleep disorder. (Doc. 19 at 9). In no way has Plaintiff come forward with any evidence that establishes (even in the slightest way) "an affirmative causal connection," *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005), between the claimed injuries and the injection Plaintiff received from Defendant Sowell. There is plainly insufficient evidence for any reasonable jury to find that

Plaintiff suffers from the claimed ailments[4] (which apparently have persisted up through 2022, Doc. 47-1 at 41-45) because of the injection Defendant Sowell gave Plaintiff in June of 2019.  *See Mann*, 588 F.3d at 1304 (finding that summary judgment was warranted on deliberate indifference claim because the plaintiff has "provided no admissible evidence to support [his] claim" that the defendant's conduct caused the alleged injuries); *see also Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1378-79 (M.D. Ga. 2012) (granting summary judgment where the plaintiff "failed to produce evidence that [the plaintiff's] injuries were caused by the Defendants' alleged deliberate indifference").  Defendant Sowell is, therefore, entitled to summary judgment on Plaintiff's deliberate indifference claim.[5]  *See generally Celotex*, 477 U.S. at 322 (explaining that summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of

---

[4] It bears mentioning that Plaintiff has been inconsistent regarding when his hemorrhoid pain began.  He now attributes his hemorrhoid to the June 2019 injection, but the medical record shows that on some occasions Plaintiff has stated that his hemorrhoid problem began in October of 2020.  (Doc. 47-1 at 40) ("my hemorrhoidal problem just started back in end of October 2020"); (Doc. 47-1 at 41) ("the hemorrhoidal is from 2020"); (Doc. 47-1 at 42) ("the hemorrhoidal problem started in 2020").  And on other occasions, Plaintiff has said the hemorrhoid problem began in 2019.  (Doc. 47-1 at 45).

[5] Courts have consistently dismissed lawsuits brought by inmates who claim to have been poisoned by correctional officials.  *See, e.g.*, *McGhee v. Rodriguez*, No. 19-cv-0340, 2020 WL 5653864, at *3 (D.N.M. Sept. 23, 2020) (citing cases).

an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Defendant construes Plaintiff's allegations as asserting two more aspects of an Eighth Amendment claim—one, that Defendant Sowell was deliberately indifferent to a substantial risk that Plaintiff would suffer an adverse reaction to the TB skin test; and two, that Sowell was deliberately indifferent to Plaintiff's need for medical treatment for the adverse reaction. (Doc. 43 at 6-8). The Court does not read Plaintiff's Fifth Amended Complaint as asserting these claims. But to the extent it does, the Court agrees that Defendant is entitled to summary judgment.

As to the adverse reaction issue, the summary judgment record is devoid of any evidence from which a reasonable jury could find that Defendant Sowell subjectively knew Plaintiff was at a substantial risk of suffering a serious adverse reaction to the TB skin test. Plaintiff has come forward with no evidence that shows he told Defendant Sowell of any allergies or prior adverse reactions to TB tests.

As to the failure to treat an adverse reaction issue, there is no evidence that Defendant Sowell was subjectively aware that Plaintiff suffered an adverse reaction to the skin test. Plaintiff does not allege he told Defendant that he was suffering any adverse reactions when the two of them talked on June 23rd. Nor is there any evidence that Plaintiff was exhibiting any symptoms of a reaction in Defendant

Sowell's presence. There also is no evidence showing that Plaintiff informed Defendant Sowell that he was having an adverse reaction. For these reasons, Defendant is entitled to summary judgment on these other aspects of Plaintiff's deliberate indifference claim (to the extent Plaintiff asserts them).

**B. Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.**

Plaintiff also claims that Defendant Sowell violated the Fourteenth Amendment by injecting him with poison. (Doc. 19 at 3, 7). More specifically, Plaintiff alleges the Due Process Clause and the Equal Protection Clause guaranteed him the right "to be free from intentional poison needle shots . . . [and] poisonous acts." (*Id.*).

Plaintiff has not stated a plausible claim for relief under either the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment. A substantive due process analysis is inappropriate here because Plaintiff's claims are covered by the Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process). Plaintiff's allegations do not state a plausible equal protection claim because he has not made a threshold showing that he was treated differently from any other similarly situated inmate. *See Nordlinger*

15

*v. Hahn*, 505 U.S. 1, 10 (1992) (stating that the Equal Protection Clause prevents "governmental decisionmakers from treating differently persons who are in all relevant respects alike"). For these reasons, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claims.

## IV. Conclusion

For the reasons above, no reasonable jury could find in Plaintiff's favor on his claims against Defendant Sowell. Accordingly, it is respectfully **RECOMMENDED** that:

1. Defendant's motion for summary judgment (Doc. 43) be **GRANTED**.

2. Defendant's motion to dismiss (Doc. 29) be **DENIED as moot**.[6]

3. The Clerk of Court be directed to enter judgment in favor of Defendant and close this case.

At Pensacola, Florida this 14th day of February, 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and**

---

[6] Defendant previously filed a motion to dismiss, but he moved for summary judgment before receiving a ruling on the motion to dismiss.

16

**Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**